# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1004
_____

United States of America

*Plaintiff - Appellee*

v.

Inmar Hernandez-Pineda

*Defendant - Appellant*

_____

No. 16-1007
_____

United States of America

*Plaintiff - Appellee*

v.

Inmar Hernandez-Pineda

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Sioux City

_____

_____

Before RILEY, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

This case is about whether Inmar Hernandez-Pineda's ten-year sentence for illegally reentering the United States, see 8 U.S.C. § 1326(a), (b)(2), was reasonable. It is also, incidentally, about the dangers of running with knives. On the legal issue, we hold the sentence was within the district court's[1] discretion. The second point speaks for itself.

## I.    BACKGROUND

In late spring 2015, Hernandez-Pineda and Elim Escobar-Alvira tried to hold up a bakery in Sioux City, Iowa. Escobar-Alvira brought an unloaded sawed-off shotgun, Hernandez-Pineda carried a butcher knife. Things did not go well. While a bakery employee disarmed Escobar-Alvira and briefly wrestled him to the ground, Hernandez-Pineda bolted. On his way out, Hernandez-Pineda ran into the door and stabbed himself in the stomach. By the time Escobar-Alvira got up, Hernandez-Pineda was gone, along with their getaway van. Both perpetrators were caught within an hour, and Hernandez-Pineda was taken to the hospital for emergency surgery.

The botched robbery brought Hernandez-Pineda, a citizen of El Salvador who had been removed from the United States twice before, to the attention of federal immigration authorities. Hernandez-Pineda eventually pled guilty to unlawful reentry

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

in exchange for the government agreeing not to take a position on whether his various sentences should run concurrently or consecutively. He also admitted the reentry and robbery were violations of the terms of his supervised release for a 2013 illegal-reentry conviction.

At a combined sentencing and revocation hearing, the district court acknowledged the uncontested United States Sentencing Guidelines (Guidelines) advisory range for the illegal reentry was 33 to 41 months. Because Hernandez-Pineda's original removal had followed an "aggravated felony" conviction—second-degree theft, for stealing a van and driving to Las Vegas, see Iowa Code § 714.2(2)—the statutory maximum was twenty years. See 8 U.S.C. § 1326(b)(2). The government asked for half that, presenting evidence of the circumstances of the robbery, Hernandez-Pineda's gang membership, and the many other crimes he had previously committed. Hernandez-Pineda conceded "there are certainly aggravating factors in the case," but argued they were mitigated by other considerations. He emphasized that he was brought to the United States as a toddler and has known no other home, virtually his entire family lives in Iowa, and he faced a substantial risk of violence in El Salvador, all of which arguably helped explain, if not justify, his decision to return to the United States. He also pointed out that an Iowa state court had already sentenced him to fifteen years on counts arising out of the robbery itself, so he would be serving a significant prison term regardless of how the district court ruled in this case.

The district court agreed with the government and varied upward to 120 months, listing the following reasons:

> The serious nature of the defendant's criminal conduct, the escalating nature of the defendant's criminal conduct, the repetitive nature of the defendant's criminal conduct, the fact that he's been to prison, he doesn't seem to have learned anything and gets out and then commits an

even more serious offense than any of the offenses that caused him to go to prison.

The district court also revoked Hernandez-Pineda's supervised release and sentenced him to 24 months for the admitted violations. The district court made half of each federal sentence—that is, six years total—consecutive, with the other halves to run concurrently with each other and the state sentences. See 18 U.S.C. § 3584(a). Hernandez-Pineda filed appeals from both sentences, which we consolidated for review, see 28 U.S.C. § 1291 (appellate jurisdiction), yet Hernandez-Pineda now focuses on the 120 months he received for the illegal reentry.[2]

## II.  DISCUSSION

We review sentences for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). Hernandez-Pineda argues the district court abused its discretion by either failing to consider the factors that supported a shorter sentence—namely "the young age at which [he] came to the United States, the presence of his family in the United States, and his lengthy state prison sentence"—or committing a clear error of judgment in doing so. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

Hernandez-Pineda presented his mitigating circumstances to the district court both in his sentencing memorandum and orally at the hearing. We are satisfied the district court did not ignore them. Cf. United States v. Keating, 579 F.3d 891, 893

---

[2]The passing references to the revocation sentence in Hernandez-Pineda's brief are not enough to raise an issue on appeal. See, e.g., United States v. Sigillito, 759 F.3d 913, 933 (8th Cir. 2014); see also Fed. R. App. P. 28(a)(8)(A). In any event, 24 months was the low end of the uncontested advisory Guidelines range (albeit also the statutory maximum, see 18 U.S.C. § 3583(e)(3)), and we perceive no abuse of discretion in the sentence. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (standard of review).

(8th Cir. 2009) ("[W]here the district court heard argument from counsel about specific [18 U.S.C.] § 3553(a) factors, we may presume that the court considered those factors."). Prompted by Hernandez-Pineda's oral argument, the district court asked about how much of the state sentence he would likely serve before being up for parole, and the district court then made the federal sentence partially concurrent with the state sentence, clearly demonstrating an understanding of Hernandez-Pineda's concerns about the total prison time he faced. In explaining the sentence and upward variance, the district court repeatedly expressed its view that Hernandez-Pineda's recidivism "far, far, far outweigh[ed] any mitigating factors," again reflecting an awareness and consideration—and, in this case, rejection—of Hernandez-Pineda's arguments for leniency.

The sentence was not substantively unreasonable either. True, the contrast between what the district court imposed and the Guidelines recommendation is sharp—120 months is almost triple the high end of the advisory range. But the circumstances of this case plainly supported a long term of imprisonment, and even Hernandez-Pineda acknowledged "there are certainly aggravating factors in th[is] case." And the district court offered a detailed "'individualized assessment'" and explanation of why it considered the sentence appropriate, Feemster, 572 F.3d at 461 (quoting Gall, 552 U.S. at 50), specifically focusing on Hernandez-Pineda's personal "history and characteristics" and the need "to protect the public from further crimes," 18 U.S.C. § 3553(a)(1), (2)(C), in light of his "nonstop" and "escalating" criminal activity. Supported by that explanation, the 120-month sentence here, while perhaps unusually long,[3] was not an abuse of discretion. Cf. Feemster, 572 F.3d at 461-62

---

[3]We are not swayed by Hernandez-Pineda's citation—for the first time on appeal—to a report noting that in fiscal year 2013 "virtually all illegal reentry offenders . . . were sentenced at or below" ten years. U.S. Sentencing Comm'n, Illegal Reentry Offenses 10 (2015). A statistic about the rarity of sentences longer than Hernandez-Pineda's tells us next to nothing about how many defendants receive sentences the same length as his, particularly given that ten years is the maximum

(explaining "we 'may consider the extent of the deviation,'" but "*may not* require '"extraordinary" circumstances to justify a sentence outside the Guidelines' and are prohibited from 'the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence'" (quoting <u>Gall</u>, 552 U.S. at 47, 51)).

## III.   CONCLUSION

Hernandez-Pineda's sentence is affirmed.

———————————————————

———————————————————

authorized sentence for illegal reentry in many cases, <u>see</u> 8 U.S.C. § 1326(b)(1), (3), (4).  Nor do we have any way of knowing how the backgrounds of the defendants who received lighter sentences compared to the extensive and rapidly acquired criminal history of Hernandez-Pineda that the district court described as "escalating" and found exceptional enough to justify a significant upward variance for Hernandez-Pineda in this case.  <u>See</u> 18 U.S.C. § 3553(a)(6) (recognizing "the need to avoid *unwarranted* sentence disparities among defendants with *similar* records who have been found guilty of *similar* conduct" (emphasis added)).