# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3612

_____

United States of America

*Plaintiff - Appellee*

v.

Cowan Godfrey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: June 9, 2017
Filed: July 25, 2017

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Cowan Godfrey pleaded guilty to one count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1). The district court[1] sentenced him to 120 months' imprisonment followed by three years of supervised release. Godfrey

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

appeals his sentence, arguing that the district court committed procedural error, imposed a substantively unreasonable sentence, and imposed an improper special condition of supervised release. For the following reasons, we affirm.

## I. BACKGROUND

On April 1, 2015, police officers responded to a report of shots fired in Jackson Park in Dubuque, Iowa. At the time of the incident, the park was occupied by multiple families and young children. By the time officers arrived, the shooting had ended and the individuals involved had fled. Officers interviewed several witnesses, and they obtained several surveillance videos depicting the shooting.

The videos show Godfrey entering Jackson Park with a group of associates. One of these associates, Principal Springer, was a member of the "Moes" street gang in Dubuque and went by the street name "Little Moe." The videos show that Godfrey and his associates exited their vehicles, walked up a small hill leading into the park, and sat on a set of benches near a large set of playground equipment. Godfrey then temporarily left Springer's group and went to a different area of the park. During Godfrey's absence, Springer's group was approached by a group of people belonging to a rival gang, the Black Disciples. One of the Black Disciples members, Demarcus Timmons, ran up to Springer's group, took off his sweatshirt, and threw it down in a threatening manner. Although the videos are not equipped with sound, they show what appears to be a verbal confrontation between Timmons and Springer's group. Three witnesses originally claimed that they saw Timmons or another Black Disciples member, Derrick Moore, display a firearm during the confrontation, but these witnesses later recanted their statements, and no such firearm is visible in the videos.

During this confrontation, the videos show that Godfrey ran up to the two groups, observed them for several seconds, and then ran down the hill towards the street and the parked vehicles, where he remained off-camera for approximately thirty

-2-

seconds. While Godfrey was gone, Timmons retrieved his sweatshirt, and he and Moore began walking away from Springer's group. Godfrey then reappeared on camera, running towards the park while carrying a handgun he apparently had retrieved from one of the vehicles. Before he reached the base of the hill, Godfrey raised the gun and began shooting in the direction of Timmons and Moore. When he began shooting, he was over thirty feet away from Timmons but only a few feet away from a mother with her children. As soon as Godfrey began shooting, everyone in the area immediately scattered, with families fleeing in visible terror. Godfrey continued to shoot as he ran up the hill. As he neared the top of the hill, he stopped shooting, turned around, and fled. Police officers later retrieved seven shell casings in the area that Godfrey ran through while shooting, and they determined that one of Godfrey's bullets struck the playground equipment several inches from the ground. Fortunately, no injuries were reported.

As a result of the police investigation, Timmons, Moore, and Godfrey were arrested. For their participation in the incident, Timmons and Moore were charged with several crimes in Iowa state court. They pleaded guilty to some of these charges, but others were dismissed. Godfrey was charged in federal court with one count of being a felon in possession of ammunition. *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pleaded guilty and proceeded to sentencing.

The Presentence Investigation Report ("PSR") calculated Godfrey's total offense level as 15. This calculation included a three-level reduction for acceptance of responsibility, which the Government did not dispute. *See* U.S.S.G. § 3E1.1. However, the Government objected to the PSR's failure to apply a cross-reference for attempted murder, which would have increased Godfrey's base offense level to 33 and his total offense level to 30. *See* U.S.S.G. § 2A2.1(a)(1).

After the Government made this objection, Godfrey objected to the PSR's description of the offense conduct, which stated that Godfrey was "shooting in the

direction" of Timmons and Moore. Godfrey contended that when he "ran towards the direction of Timmons and Moore and actually shot the gun, it was pointed towards the sky." He suggested that Timmons and Moore "arrived at the park with a concealed firearm, displayed the firearm, and began to assault people" and that "Moore began firing his weapon first, which resulted in [Godfrey] firing the weapon." Godfrey also objected to the PSR's recommendation that the district court impose a special condition of supervised release prohibiting him from using alcohol or entering any bar or tavern.

Before the sentencing hearing, the Government requested that the district court apply the cross-reference for attempted murder because the locations of Godfrey's shots were consistent with an attempt to shoot and kill people. In the alternative, the Government requested that the district court apply an upward departure because of the manner in which Godfrey endangered others. *See* U.S.S.G. § 5K2.6. In response, Godfrey maintained that he fired the gun "in order to protect others from being injured or killed by Timmons and Moore" after they "displayed their revolver, cocked the hammer, and pointed it at others."

At the sentencing hearing, before taking evidence on the disputed sentencing issues, the district court made the following comment:

> So the issue is the cross-reference and upward departure. I would just say, in terms of the offense conduct, Defense Objection 1, there are some representations about Timmons and Moore assaulting people, displaying a weapon, the gun pointing toward the sky. I looked at the videos. I didn't see any of that, and so if there's evidence of that, that's fine, but I didn't see it. I didn't see any physical altercation between anybody. I didn't see anybody assaulting other people. I didn't see anyone except Mr. Godfrey with a firearm. I did not see him pointing the firearm to the sky. So if that's defense—if you're really contending that, you are going to have to find the evidence, because it's not on these videos.

After receiving evidence related to the disputed sentencing issues, the district court also expressed its belief that Godfrey "did not take overall responsibility" for his actions because "he's frivolously contesting offense conduct. And when you do that, you can lose acceptance."

The following month, the court announced its findings and disposition. The court first noted that "[t]his case does not fit neatly into the advisory guidelines because the relevant conduct of the defendant is not fully captured in the computation." Specifically, the court explained that United States Sentencing Guidelines § 2K2.1 applies initially to an offense for being a felon in possession of ammunition "as though the possession of ammunition was peaceful and passive, and obviously that's not the case [here]." The court observed that it could "deal with the aggravated relevant conduct" either by applying the cross-reference for attempted murder or by departing upwards, but instead it chose to vary upward to impose a non-guidelines sentence after considering the statutory factors included in 18 U.S.C. 3553(a). Regardless, the court recognized that it was required to calculate the advisory guidelines range, and it proceeded to do so.

The court adopted the offense-level scoring in the PSR but declined to grant Godfrey a reduction for acceptance of responsibility. The court noted that "[a]lthough he may have pled guilty, the objections that he's made to the presentence investigation deny what I find to be relevant conduct and mischaracterize what happened." The court further explained that Godfrey "claims Timmons and Derrick Moore were assaulting people. He also claims that when he fired the gun, it was pointed to the sky, and we know that's not true. The video reflects and the testimony of the officer proves both of these assertions to be false." Thus, the court calculated Godfrey's total offense level as 18 rather than 15.

With a total offense level of 18 and a criminal history category of II, Godfrey's advisory guidelines range was 30 to 37 months' imprisonment, but the court reiterated that "this guideline calculation is not what I am depending on in arriving at a sentence." The court then discussed how the relevant § 3553(a) factors supported an upward variance, especially noting that Godfrey discharged his weapon "in very close proximity to women and children, innocent visitors to the park" and that this was "premeditated conduct." Thus, the court imposed a sentence of 120 months' imprisonment, the statutory maximum for his offense. *See* 18 U.S.C. § 924(a)(2). In doing so, the court noted that it had "considered the guidelines and computed them, but they are not the basis of [the] sentence."

The court also imposed a three-year term of supervised release and overruled Godfrey's objection to the PSR's recommended ban on using alcohol and entering bars or taverns during this time. The court found that this special condition of supervised release was appropriate because Godfrey "had a history of abusing alcohol" and "[f]rom age 19 to 26 he consumed a 5th of liquor per week and used marijuana on a weekly basis." As the court concluded the hearing, Godfrey's counsel asked the court to recommend a "drug education program" for Godfrey, and the court obliged. Godfrey now appeals his sentence.

## II. DISCUSSION

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations omitted). "We review a district court's sentence in two steps: first we review for significant procedural error; and second, if there is no significant procedural error, we review for substantive reasonableness." *United States v. O'Connor*, 567 F.3d 395, 397 (8th Cir. 2009) (citations omitted).

Godfrey argues that the district court committed procedural error because it: (1) improperly placed the burden of proof on Godfrey to prove that he fired the handgun in self-defense; (2) clearly erred in denying him a reduction for acceptance of responsibility; and (3) did not consider the guidelines or explain the basis for its chosen sentence. Godfrey also argues that the district court imposed a substantively unreasonable sentence and abused its discretion by imposing a "no alcohol" special condition of supervised release. We address each argument in turn.

## A. Procedural Error

Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Feemster*, 572 F.3d at 461 (quotation omitted). "This list of potential procedural errors is not exhaustive, and other procedural errors may be considered, as well." *United States v. Azure*, 536 F.3d 922, 930 (8th Cir. 2008). "In reviewing the sentence for procedural errors, we review a district court's interpretation and application of the guidelines de novo and its factual findings for clear error." *United States v. Fischer*, 551 F.3d 751, 754 (8th Cir. 2008) (quotation and alterations omitted).

### 1. Burden of Proof

Godfrey first argues that the district court committed procedural error by placing the burden of proof on him to establish that he acted in self-defense. He points to our decision in *United States v. Azure*, in which we held that "[t]he government has the burden to prove the absence of any defense by a preponderance of the evidence." 536 F.3d at 933. He contends that the district court erroneously assigned this burden to Godfrey, as evidenced by its instruction to Godfrey that "if

you're really contending [self-defense], you are going to have to find the evidence, because it's not on these videos." He further suggests that this erroneous burden allocation affected his sentence because it influenced the court's finding that "[h]e was not acting in self-defense or in defense of others" when the court considered whether Godfrey accepted responsibility and whether to apply the murder-cross reference, a departure, or a variance.

First, we note that Godfrey did not object to this alleged procedural error during the sentencing hearing. Thus, we review only for plain error. *See United States v. Vaughn,* 519 F.3d 802, 804 (8th Cir. 2008). "Under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Delgrosso*, 852 F.3d 821, 828 (8th Cir. 2017) (quotations and alterations omitted).

Here, Godfrey fails to show that the district court committed plain error in assigning the burden of proof. In *Azure*, the district court expressly "indicated it was unsure of the proper allocation of the burden of proof" in a sentencing hearing where the defendant raised self-defense as a justification for his conduct. 536 F.3d at 933. As a result, we held that the court committed procedural error. *Id.* Here, in contrast, nothing suggests that the district court believed that Godfrey bore the burden of proof to establish self-defense. Rather, the court told Godfrey "you are going to have to find the evidence" only after viewing the video evidence, which belied Godfrey's version of events. Hence, this comment reveals nothing more than the court's belief that the Government already had set forth sufficient evidence to disprove Godfrey's claim that he acted in self-defense. As such, we find no plain error.

## 2. Acceptance of Responsibility

Godfrey next argues that the district court committed procedural error by denying him a guidelines reduction for acceptance of responsibility. The sentencing guidelines provide for a decrease in the defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). However, "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 cmt. n.3. As the guidelines note, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(A). "A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation." *United States v. Walker*, 688 F.3d 416, 426 (8th Cir. 2012).

Godfrey contends that the district court clearly erred because his objection to the PSR's description of the relevant conduct was not frivolous. He reasons that his "objection was based upon significant evidence corroborating his claim that Timmons and Moore initiated the altercation, displayed a firearm, threatened to shoot [his] companions, and fired the initial shots."

However, "we need not decide whether the objection[] [was] in fact frivolous." *United States v. Mahone*, 688 F.3d 907, 911 (8th Cir. 2012). Rather, "[t]he commentary focuses both on false denials and frivolous legal challenges." *Id.* Hence, we regularly affirm denials of acceptance-of-responsibility reductions on the basis that the defendant falsely denied—rather than frivolously contested—relevant conduct. *See, e.g., id.* ("Here, as the district court found, [the defendant's] persistent denial of obviously relevant conduct—that he was involved in the guns and drugs present in Apartment 12—was clearly false."); *United States v. Greger*, 339 F.3d 666, 673 (8th Cir. 2003) (holding that district court did not clearly err by denying

acceptance-of-responsibility reduction for defendant who "contested relevant conduct which the district court found to be true—sales of additional quantities of drugs"). Here, although the district court mentioned during the sentencing hearing that Godfrey was "frivolously contesting offense conduct," it did not refer to Godfrey's claims as "frivolous" when announcing its findings and disposition. Instead, the court explained that it was denying the sentencing reduction because it determined that "[t]he video reflects and the testimony of the officer proves [Godfrey's] assertions to be false." None of the evidence cited by Godfrey shows that this determination was clearly erroneous.

First, Godfrey cites the statements of three witnesses who originally claimed that they saw Timmons hand a gun to Moore. One witness also claimed that Moore fired the gun, and another witness claimed that Moore already was shooting when "another guy ran to a car, got a gun, and began shooting as well." Second, Godfrey cites the guilty pleas and state-court convictions of Timmons and Moore. These records reveal that Timmons pleaded guilty to providing a weapon to a person under the age of twenty-one, unlawful assembly, and disorderly conduct. *See* Iowa Code Ann. §§ 724.22(2), 723.2, 723.4(1). They also reveal that Moore pleaded guilty to participating in a riot. *See* Iowa Code Ann. § 723.1. Taken together, Godfrey contends that these witness statements and guilty pleas corroborate the version of events presented in his objection.

However, Officer Schlosser explained to the district court that these witnesses later recanted their statements about Timmons providing Moore with a gun. In addition, although Timmons pleaded guilty to providing Moore with a firearm, the documents in the record provide no other details about the actual crime beyond what the witnesses provided in the statements they later recanted. Notably, Timmons also was charged with carrying a concealed weapon, *see* Iowa Code Ann. § 724.4(1), and Moore was charged with intimidation with a dangerous weapon, *see* Iowa Code Ann. § 708.6, but both of these charges were dismissed pursuant to plea negotiations.

-10-

Thus, their state-court convictions do not prove that either of them displayed a gun, pointed it at others, or fired it. Certainly, they do not rebut the video and physical evidence presented at the sentencing hearing.

Indeed, the videos and physical evidence presented by the Government belie Godfrey's version of events. First, the videos show that Godfrey did not point the gun "towards the sky" as he fired. Instead, he pointed the gun towards the area where Timmons and Moore were standing. Although the firearm is raised slightly, that is because Godfrey fired his weapon before he reached the top of the hill leading into the park. Thus, as the district court recognized, in order to aim at Timmons and Moore, Godfrey "had to bring the firearm up slightly because of the incline that they were on." Moreover, the physical evidence revealed that one of Godfrey's bullets struck the playground equipment just a few inches above ground level. This suggests that Godfrey's shots were not aimed towards the sky.

Second, as the district court noted, even if Timmons or Moore had a firearm with them, "the video does not show any assault of any kind or any firing of a firearm by the other two individuals" as Godfrey claimed. Rather, the video shows that nobody fired a weapon before Godfrey. The moment that Godfrey reappears on camera firing his weapon is the moment that the crowd in the park immediately scatters. Prior to that, a few people distanced themselves from the altercation, but nobody clearly reacted as if someone pointed a gun at them or otherwise assaulted them. In particular, several people sitting near Springer's group quickly got up to leave as soon as Timmons's group arrived and began the verbal altercation, but their reaction pales in comparison to the reaction of everyone in the park once Godfrey started firing. In fact, as the district court noted, "the groups [were] actually dispersing" when Godfrey started firing, and thus "[t]here was no danger, imminent danger, to anyone." Moreover, the police recovered no shell casings in the area where Timmons and Moore were located, suggesting that neither of them fired a weapon.

In spite of this evidence, Godfrey suggests that the district court nevertheless clearly erred in denying him a reduction because he did not testify or introduce perjured testimony in support of his objections. As support, he points to our decision in *United States v. Bradford*, in which we affirmed a denial of a reduction for acceptance of responsibility because the defendant knowingly presented the district court with a false alibi witness. 499 F.3d 910, 922 (8th Cir. 2007), *abrogated on other grounds by United States v. Villareal-Amarillas*, 562 F.3d 892, 896 (8th Cir. 2009). There, we observed that the defendant's "argument for an acceptance-of-responsibility adjustment would have been stronger had he simply contested the issue of fact at the sentencing hearing, but otherwise remained silent." *Id.*

However, we did not purport to decide whether a denial of such an adjustment always would be clearly erroneous where a defendant objects to relevant conduct in writing but does not provide false testimony. To the contrary, we have not hesitated to affirm such denials based on a defendant's false written objections. *See, e.g.*, *United States v. Wineman*, 625 F.3d 536, 538-39 (8th Cir. 2010) (holding that district court did not clearly err in denying acceptance-of-responsibility reduction based on defendant's "false claim in his objection to the PSR"). Here, although Godfrey did not testify falsely or introduce perjured testimony during the sentencing hearing, he repeatedly made clearly false statements in both his written objection to the PSR and his sentencing memorandum. Indeed, because Godfrey engaged in such a "persistent denial of obviously relevant conduct . . . [that] was clearly false," *see Mahone*, 688 F.3d at 911, we see little difference in whether he made these false statements either through his testimony at sentencing or through his written objections and memoranda prior to sentencing. As such, we hold that the district court did not clearly err in finding that Godfrey did not accept responsibility for his offense.

### 3. Consideration of the Guidelines and Explanation of Sentence

Godfrey next argues that the district court committed procedural error by failing to consider the guidelines in imposing its sentence and by failing to explain its chosen sentence. Because Godfrey did not object to these alleged errors during sentencing, we review for plain error. *See Vaughn,* 519 F.3d at 804.

"Although the district court has discretion to depart from the Guidelines, the court must consult those Guidelines and take them into account when sentencing." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016) (quotation omitted). Further, "[i]n explaining the chosen sentence and analyzing the relevant § 3553(a) factors, a district court is not required to provide a full opinion in every case." *United States v. Hill*, 552 F.3d 686, 691 (8th Cir. 2009) (quotation omitted). Rather, it simply "must set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Id.* (quotation omitted).

Godfrey contends that "[t]he district court did not take the Guidelines into account in any way when it determined [his] final 120 month sentence." However, the record reveals that the court amply considered the guidelines. The court heard arguments regarding whether to apply an attempted murder cross-reference or a departure as contemplated by the guidelines, calculated the advisory guidelines range, noted that this case "does not fit neatly into the advisory guidelines because the relevant conduct of the defendant is not fully captured in the computation," and expressly stated that it "considered the guidelines and computed them, but they are not the basis of [the] sentence." On this record, we cannot conclude that the court plainly erred.

Godfrey also suggests that "the district court did not explain the reasons for the major departure from the recommended Guidelines range." However, again, the

-13-

record belies Godfrey's assertion. The court explained that it decided to impose a sentence outside of the advisory guidelines range "based on the factors at 18 United States Code Section 3553(a)." It stated that it had "considered each and every one of the factors" and proceeded to discuss two of them in more detail: the nature and circumstances of the offense, and the history and characteristics of the defendant. The court explained that the nature and circumstances of the offense weighed in favor of an upward variance because Godfrey's conduct was "premeditated" and because he fired his gun "in very close proximity to women and children, innocent visitors to the park that day" who "far outnumber[ed] the troublemakers." The court also noted that Godfrey's criminal behavior had escalated from a prior conviction for unlawful possession of a firearm. Thus, we are satisfied that the district court had a reasoned basis for its decision and did not plainly err. *See Feemster*, 572 F.3d at 463 (holding that district court provided adequate explanation where it "offered three justifications for the variance").

Relatedly, Godfrey complains that the district court did not discuss the cases he cited in support of his argument that he should receive a lower sentence. However, all of the cases Godfrey cited addressed departures under U.S.S.G. § 5K2.6 rather than variances under § 3553, and none of them even held that the departure at issue was unreasonable. *See, e.g.*, *United States v. Donelson*, 450 F.3d 768, 774 (8th Cir. 2006) (holding that district court's two-level upward departure was reasonable where defendant fired ten rounds at a group of four individuals). We see no reason to hold that the district court plainly erred by declining to address these inapposite cases, especially given that the court established that it had a reasoned basis for its opinion.

In sum, Godfrey fails to show that the district court committed procedural error.

## B. Substantive Reasonableness

"In the absence of procedural error below, we should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Feemster*, 572 F.3d at 461 (quotation omitted). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* (quotations omitted). "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Id.* at 464 (quotation omitted).

First, Godfrey points out that the 120-month sentence represented a 400% increase from the bottom of the 30-37 month advisory guidelines range, and he argues that this percentage increase was so extreme as to render the variance unreasonable. However, we have previously rejected this percentage-based argument, noting that "deviations from the Guidelines range will always appear more extreme—in percentage terms—when the range itself is low" and concluding that the "percentage of the [variance] is thus not sufficient in and of itself to find [a defendant's] sentence substantively unreasonable." *United States v. Hummingbird*, 743 F.3d 636, 637-38 (8th Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 47-48 (2007)).

Second, Godfrey argues that the district court erred in weighing the § 3553(a) factors. Specifically, he suggests that the district court placed too much weight on the nature and circumstances of the offense because "[n]o one was injured in the incident." As support, Godfrey points to a case in which a defendant shot at two individuals outside a residence while two young children were at the residence and nobody was injured. *See United States v. Martinez*, 821 F.3d 984, 987 (8th Cir.

2016). There, we held that the resulting 262-month sentence was substantively unreasonable. *Id.* at 986.

However, in that case, the district court did not cite the nature and circumstances of the offense when justifying its variance. Rather, it cited only the defendant's prior convictions and evidence that he had ties to local gangs. *Id.* at 989. We held that the violence that the defendant displayed in his previous crimes did not support such a substantial variance because "the guidelines already accounted for this conduct." *Id.* at 990. We also noted that although photos and videos showed the defendant's gang affiliation, "they [did] not depict such egregious, violent behavior that they warrant[ed] the substantial upward variance the district court imposed." *Id.* at 990.

Here, in contrast, Godfrey placed many innocent people in grave danger by shooting seven bullets into a crowded neighborhood park. As a result, the district court imposed a 120-month sentence primarily because of the nature and circumstances of the offense. This alone does not constitute an abuse of discretion. *See United States v. Wisecarver*, 644 F.3d 764, 774 (8th Cir. 2011) ("The district court's choice to assign relatively greater weight to the nature and circumstances of the offense . . . is well within the wide latitude given to individual district court judges in weighing relevant factors." (citations and alterations omitted)).

Third, Godfrey complains that the district court summarily cited various factors related to his history and characteristics without explaining how they justified an upward variance. Godfrey also suggests that several of these factors were irrelevant and that it was improper to rely on them. Specifically, the district court noted the following about Godfrey: "[He] is age 30. He has three children from three relationships. He does not have a high school education, nor a GED. He's a gang member. He has limited lawful employment. He has had a history of abusing alcohol."

However, we need not decide whether any of these factors were improper in justifying an upward variance because the court did not specify whether it believed each factor was aggravating or mitigating. *Cf. United States v. Mendez*, 685 F.3d 769, 772 (8th Cir. 2012) (noting that a district court may "elect[] to emphasize the length of Defendant's period of criminal behavior as evidence of incorrigibility rather than focus upon Defendant's age at the beginning of that period as a mitigating factor"). It simply recited them after stating that "[a]nother factor the Court must consider under 3555(a) is the history and characteristics of the defendant." In contrast, the court expressly noted that "[o]f concern to this Court, in terms of his history and characteristics, is his prior conviction because it is along the same lines as the instant prosecution" and "his criminal behavior has even escalated from that conviction."

Even without considering the other factors, this escalation in criminal behavior and the nature and circumstances of the offense are sufficient to justify the sentence imposed. *See United States v. Hernandez-Pineda*, 849 F.3d 769, 771-73 (8th Cir. 2017) (holding that 120-month sentence, despite advisory guidelines range of 33 to 41 months, was not substantively unreasonable based on district court's stated justifications of "[t]he serious nature of the defendant's criminal conduct, the escalating nature of the defendant's criminal conduct, [and] the repetitive nature of the defendant's criminal conduct"). Because the district court did not indicate that it was relying on the other factors as a justification for its sentence, we cannot conclude that it gave significant weight to an improper factor or failed to sufficiently explain how each of these factors justified an upward variance. *See United States v. Meza-Lopez*, 808 F.3d 743, 746-47 (8th Cir. 2015) (rejecting argument that district court gave significant weight to improper factor where defendant "present[ed] no evidence the district court relied upon any outside evidence [regarding defendant's involvement in a conspiracy] in deciding his sentence other than [the defendant's] belief that the district court, in mentioning its knowledge of the conspiracy, factored

in this knowledge in determining his sentence"). Therefore, the sentence imposed was not substantively unreasonable.

## C. Special Condition of Supervised Release

Finally, Godfrey challenges the district court's imposition of the special condition of supervised release prohibiting him from using alcohol or entering bars or taverns. We review the impositions of special conditions for abuse of discretion. *United States v. Woodall*, 782 F.3d 383, 385 (8th Cir. 2015) (per curiam). District courts have broad discretion to impose special conditions, provided that each condition "1) is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a); 2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and 3) is consistent with any pertinent policy statements issued by the Sentencing Commission." *Id*. at 385-86 (citation omitted). Godfrey challenges only the first requirement: that the special condition be reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a).

One of the sentencing factors set forth in § 3553(a) is the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Hence, "[i]n general, we have upheld [complete] bans [on alcohol] for defendants with substance-abuse problems" even where alcohol use was not related to the offense of conviction. *See United States v. Forde*, 664 F.3d 1219, 1222-23 (8th Cir. 2012), *cert. denied*, 567 U.S. 923 (2012). As Godfrey points out, the Government presented no evidence suggesting that his offense of conviction was related to alcohol use. "The question then is whether [Godfrey's] history justified prohibiting him from both using alcohol and entering bars and taverns." *See id.* at 1223.

Here, the district court found that Godfrey "has had a history of abusing alcohol" and that "[f]rom age 19 to 26 he consumed a 5th of liquor per week and used

-18-

marijuana on a weekly basis." As Godfrey points out, the district court did not make a finding that Godfrey is currently drug-dependent or at risk for cross-addiction, as in cases where we have upheld complete alcohol bans. *See, e.g.*, *id.* at 1224 (holding that "it was within the district court's discretion to recognize the threat of cross-addiction and respond by imposing the ban on alcohol use" where defendant "reported daily use of marijuana since he was 13 years old" and the district court explained that "drug users when they get off of drugs frequently abuse alcohol"). Indeed, we have previously vacated such special conditions where nothing in the record indicated that the defendant was drug-dependent at the time of sentencing. *See Woodall*, 782 F.3d at 387 ("Woodall's consumption of one or two beers each month is a light consumption of alcohol. Further, Woodall's consumption of marijuana once every other month does not constitute drug dependence."); *United States v. Walters*, 643 F.3d 1077, 1080 (8th Cir. 2011) ("[N]othing in the record suggests that Walters is 'drug dependent' and would replace an addiction to illicit substances with an addiction to alcohol. Indeed, un-objected-to portions of the PSR indicate that Walters ceased using all illicit substances years prior to the hearing and that he only lightly consumes alcohol." (citation omitted)).

However, Godfrey ignores the fact that he specifically reported to the probation office that he would benefit from a substance-abuse treatment program and that his counsel reiterated this request for a "drug education program" at sentencing. In fact, Godfrey reported that the only reason that he stopped using marijuana was because he could no longer afford it. In addition, when he did drink in the past, he engaged in significant consumption, unlike the defendants in cases where we vacated special conditions. *See Woodall*, 782 F.3d at 387; *Walters*, 643 F.3d at 1080. Thus, "it was reasonable for the district court to treat [Godfrey] as a recovering drug user, and our cases permit a sentencing court to recognize that the use of alcohol limits a recovering person's ability to maintain a drug-free lifestyle." *United States v. Mosley*, 672 F.3d 586, 591 (8th Cir. 2012) (quotation and citation omitted). Indeed, Godfrey appears to want the benefits of the court-imposed substance-abuse treatment program without

the restrictions that often come with it.  *See United States v. Henkel*, 358 F.3d 1013, 1015 (8th Cir. 2004) (finding no plain error in special condition prohibiting defendant from using alcohol and entering bars and taverns, and emphasizing that he did not object to district court's order that he "participate in the Bureau of Prisons' 500-hour comprehensive residential drug abuse treatment program").  Accordingly, we find no abuse of discretion in the district court's order.

## III. CONCLUSION

Because the district court did not commit procedural error, impose a substantively unreasonable sentence, or abuse its discretion in imposing the special condition of supervised release, we affirm.

_____