# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3134

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Bruce Lynn Troyer, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 15, 2012
Filed: May 3, 2012 (Corrected: 5/9/2012)

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HICKEY,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Bruce Troyer pleaded guilty to wire fraud and aggravated identity theft, in violation of 18 U.S.C. §§ 1343 and 1028A, respectively. The district court[2] sentenced him to 27 months' imprisonment on the wire fraud charge and the mandatory

_____

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

consecutive sentence of 24 months on the aggravated identity theft charge, for a total sentence of 51 months' imprisonment. Troyer appeals his sentence, and we affirm.

I.

From about August 2008 to September 2009, Troyer worked as the office manager at a physician's office. As part of his employment, Troyer was entrusted with a credit card account in his name but was authorized to use it only for office-related expenses. Troyer exceeded his authority by charging to the account various personal expenses, including purchases at casinos, hotels, electronics stores, limousine service providers, restaurants, gas stations, and grocery stores. To mask his wrongdoing, Troyer concealed the monthly statements from his employers and initiated automatic payments to the credit card account from the office's checking account. Troyer also used the name of one of the physicians at his office to increase the account's credit limit and forged checks using signature stamps for "petty cash" to withdraw money from the office's bank account. All told, Troyer stole over $100,000.

A grand jury charged Troyer with ten counts of wire fraud and one count of aggravated identity theft. Troyer's activities while on pre-trial release figured in his sentencing, so we recount them here. After the court released Troyer on a personal recognizance bond, he was arrested in Clayton County, Iowa, for driving with a suspended license and failing to carry a registration card or liability coverage, and his car was towed. The next day, Troyer called the manager of the towing company, claimed that "all the charges were dropped," and told him he would arrive later in the day to reclaim his vehicle. When the manager returned from lunch, he found Troyer's vehicle gone and contacted law enforcement. The manager was owed $15 for overnight storage fees. In connection with his arrest for driving on a suspended license, Troyer was ordered to attend a hearing on May 11, 2011, but he failed to appear, later contending that he was never notified that his attendance was required.

Although he had signed an appearance bond advising him of the hearing, Troyer asserted that he misunderstood the order.

On June 14, 2011, Troyer provided a urine sample that tested positive for the presence of amphetamines. Troyer denied using illegal drugs and suggested that the positive test was the result of his work as a confidential informant with the Clayton County Sheriff's Office and his exposure to a person who had been smoking methamphetamine. The pretrial officer assigned to Troyer had not authorized his work as a confidential informant, and a warrant was eventually issued for Troyer's arrest. During a hearing on the alleged violation of pretrial release conditions, Troyer admitted to smoking methamphetamine and acknowledged that the use was unrelated to any cooperation with law enforcement. The court ordered Troyer detained pending trial.

Troyer eventually pleaded guilty pursuant to a plea agreement. In exchange for Troyer's plea to one count of wire fraud and aggravated identity theft, the government moved to dismiss the remaining nine counts of wire fraud. Based on Troyer's criminal history category IV and his offense level of 14, the presentence investigation report recommended an advisory guideline range of 27 to 33 months' imprisonment on the wire fraud charge. The aggravated identity theft count carried a statutory minimum 24 months' imprisonment to run consecutive to any other sentence imposed.

Based on assistance that Troyer provided in the investigation and prosecution of certain matters, the government moved pursuant to USSG § 5K1.1 for a downward departure under the advisory guidelines, and recommended a 25-percent departure from the bottom of the advisory range. Troyer's counsel cited other instances of Troyer's ongoing cooperation with law enforcement officials and argued that the extraordinary nature of Troyer's assistance merited a reduction of 50 to 60 percent.

The district court granted the motion and announced that it would depart six months from the top of Troyer's advisory guideline range of 27 to 33 months, for an ultimate guideline sentence of 27 months on the wire fraud count. The court then imposed that term of 27 months, plus a mandatory consecutive sentence of 24 months for aggravated identity theft, for a total of 51 months' imprisonment.

## II.

Troyer argues on appeal that the district court committed procedural error at sentencing when it determined the extent of the downward departure under § 5K1.1. Because Troyer did not object at sentencing, we review for plain error. To establish a plain error warranting relief, Troyer must show that the district court committed an error that is clear or obvious, that the error affected his substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993). The error must be obvious under current law at the time of appellate consideration, *Johnson v. United States*, 520 U.S. 461, 468 (1997), and the error must be clear on the record in the district court. *See United States v. Draffin*, 286 F.3d 606, 610 (D.C. Cir. 2002). The plain error rule "serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them." *Puckett v. United States*, 556 U.S. 129, 134 (2009). If a record is ambiguous, then a party potentially aggrieved must object and afford the district court an opportunity to clarify the ruling or to correct any mistake that may have occurred. Otherwise, an appeal will fail for lack of an obvious error at the second step of plain-error analysis. *In re Sealed Case No. 98-3116*, 199 F.3d 488, 491 (D.C. Cir. 1999) ("To hold . . . that a record at worst ambiguous supports reversal is hardly consistent with plain error review.").

## A.

Troyer first contends that, in determining the extent of departure under § 5K1.1, the district court impermissibly considered factors unrelated to his assistance to law enforcement. A district court is limited to assistance-related considerations when deciding the extent of a departure under § 5K1.1. *United States v. Pepper*, 412 F.3d 995, 998 (8th Cir. 2005). According to Troyer, the district court impermissibly limited the extent of his departure because of the court's antipathy toward him and the nature of his offense. In support of his contention, Troyer points to the district court's explanation for why it was "difficult" to grant the government's substantial-assistance motion:

> [T]he reason it's difficult is, Mr. Troyer is a repeat cheat, liar, and a person who is [one] who will do anything to get money out of folks. When you think about white-collar crime, it's about the only crime I can think of where crime pays. Because here you have a man—this is his second fraudulent scheme where he gets money out of people. The first was a securities fraud with individuals, and the loss was $240,000. And I can't tell here, but I doubt seriously he's repaid the victims. Then you've got him doing this, and he has pending—and I don't know what's going to happen there, but he's got a forgery, theft second pending. So if you ever wonder why the guidelines are—or should be increased for white-collar, it's to make it a deterrent. I don't even think at this point it is a deterrent. Would you give up a little bit of your freedom for a prison sentence if you had the—if you got to keep the money? I don't know.
>
> . . . .
>
> But Mr. Troyer's a trip. Somebody gives him a job. What does he do? He spits in their eye and steals their money. Unbelievable. And repeatedly cheats people and steals from them. And then, on pretrial, lies, uses drugs, has numerous convictions. I don't think he'd be a very

good witness in court.  And that was not brought out in impeachment that I can recall at all.  So I don't know why that might have been.

Anyway, so I do grant the government's motion.  I reduce the sentence by 6 months from the top of the advisory guideline range.

The parties debate whether the district court's explanation shows that the court considered factors other than assistance in limiting the extent of the downward departure.  We need not decide who has the better view, because even assuming the district court committed the alleged procedural error, there is no reasonable probability that, but for the error, the district court would have imposed a more lenient sentence. *See United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004).

In fashioning a final sentence for Troyer, the district court was required to calculate and consider the advisory guideline range, but then also to consider the factors under 18 U.S.C. § 3553(a).  *See Gall v. United States*, 552 U.S. 38, 49-50 (2007).  Under Troyer's view, the district court impermissibly considered his history and characteristics, and the nature and circumstances of his offense, to limit the extent of departure under § 5K1.1.  But if that is what happened, then the error was simply a matter of how the district court's analysis was sequenced.  Under Troyer's view, the district court considered these factors too early, when calculating the advisory guideline range, and the error resulted in an advisory range that was higher than appropriate for a defendant who rendered his level of substantial assistance.  Yet the court was not only permitted, but required, to consider Troyer's history and characteristics, and the nature and circumstances of the offense, under 18 U.S.C. § 3553(a)(1) before determining a final sentence.  Under Troyer's interpretation of the record, the district court thought these factors called for a longer sentence than what the guidelines should have recommended, but erroneously gave effect to these factors through § 5K1.1.  If the court instead had given effect to Troyer's history, characteristics, and offense conduct under § 3553(a) after calculating the advisory guideline range, then it follows that the court would have reached the same result

-6-

under § 3553(a), even if the court had first granted a larger reduction under § 5K1.1. There was thus no plain error warranting relief.

B.

Troyer's second argument is that when the district court determined the extent of the downward departure under § 5K1.1, the court improperly refused to consider some of his assistance to law enforcement. According to Troyer, the district court mistakenly thought it lacked authority to consider certain assistance that Troyer described to the court, but on which the government did not rely in making its recommendation. He cites the following comments of the court, which discuss Troyer's submission in support of the substantial-assistance motion, to bolster his contention:

> Well, the motion is not made on the basis of what you've related to me. The only thing I can consider is the—the basis for the motion is what the government interprets as substantial assistance, and it doesn't cover all the other things you've talked about. Now, in the future, the government may make a motion based on that. . . .
>
> . . . .
>
> In considering this motion, I rely only on the grounds stated by the government because they are the ones that have to say that he rendered substantial assistance. And they did not make the motion based on the other things that [defense counsel] talked about, although they may in the future make a motion based on information in . . . this or that. I don't know. And I'll just have to deal with that when it comes.

This record does not establish a plain error. One reasonable interpretation of the court's remarks is that the court simply found that the information proffered by Troyer was not substantial enough to warrant a greater departure. Although the court

-7-

apparently started to say that the assistance cited by the government was "[t]he only thing I can consider," the court stopped itself midsentence. The court then emphasized that the government did not recommend a reduction based on the actions cited by Troyer's counsel, and that the government could move for an additional reduction in the future based on other assistance. *See* Fed. R. Crim. P. 35(b). Given that the application notes to § 5K1.1 direct that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance," USSG § 5K1.1, comment. (n.3), it is understandable that the court would accept the government's assessment that the assistance cited by Troyer did not rise to the level of "substantial." If Troyer thought the court proceeded instead on the erroneous legal premise that it was forbidden to consider assistance other than what the government cited, then it was his responsibility under the rules to raise that objection and to seek a clarification of the record. As the record stands, it does not reflect a plain error, and Troyer is not entitled to relief.

\* \* \*

The judgment of the district court is affirmed.

_____

-8-