# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3719

_____

United States of America

*Plaintiff - Appellee*

v.

Travis Shell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: December 13, 2021
Filed: January 14, 2022

_____

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Travis Shell pleaded guilty to possessing methamphetamine with intent to distribute it, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C), and to possessing a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A), he appeared

before the district court[1] for sentencing. The district court remarked at the sentencing hearing that Sentencing Commission data showed that defendants like Shell receive a sentence within the recommended Sentencing Guidelines range more often than not. Shell maintains on appeal that the court's understanding of the data was incorrect, and so he should be resentenced. We hold any error the court might have committed was harmless, and so we affirm.

Because of Shell's age, offenses of conviction, and criminal history, the Guidelines classified him as a career offender. *See* USSG § 4B1.1(a). And because Shell stood convicted of violating 18 U.S.C. § 924(c), he fell within a subset of career offenders for which the Guidelines recommend elevated prison terms. *See* USSG § 4B1.1(c). The government requested a sentence within Shell's Guideline range of 262–327 months' imprisonment, while Shell requested 211 months, which he said represented the bottom of the Guidelines range that would have applied were he just an ordinary career offender and not a § 924(c) career offender. The district court agreed with the government's recommendation and sentenced Shell to a total prison term of 262 months.

In arriving at the chosen sentence, the district court said that it considered "the sentences that other similarly situated defendants" had received, *see* 18 U.S.C. § 3553(a)(6), and observed that it "does not see a whole lot of 924(c) career offenders," so it didn't "have a whole lot of comparators." It noted, though, that it did see "a lot of people that come before the Court that have horrific criminal histories," and that it didn't appear from the court's own records that it "varies downward very often when someone has earned their stripes as a career offender."

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

The court then made the comment at the heart of Shell's appeal. It explained that it had "also looked at the United States Sentencing Commission data for career offenders because [it] wasn't just super familiar with sentencing statistics for 924(c) career offenders." The court proceeded to note that the data basically showed "that more often than not, there's a guideline range sentence that's imposed." Shell asserts that's incorrect because the most recent data available at the sentencing hearing showed that 56.84% of 924(c) offenders received downward variances, and another 17.514% received downward departures for substantially assisting authorities investigate and prosecute others. *See* U.S. Sent'g Comm'n, Quick Facts—18 U.S.C. §924(c)Firearms2(FiscalYear2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Section_924c_FY19.pdf. So, Shell maintains, "at least 74.354% of 924(c) career offenders received sentences below the initially applicable guideline range in fiscal year 2019." We point out, though, that Shell has not argued for a substantial-assistance departure either before the district court or our court, so if the district court missed the mark it did not miss it by much.

We have said that a court commits procedural error in sentencing by "selecting a sentence based on clearly erroneous facts." *See United States v. King*, 898 F.3d 797, 809 (8th Cir. 2018). The district court did not advert to or cite any source to support its statistical assertion, and we have not uncovered any obvious source that might have informed the court's understanding. The government does not attempt to support the court's interpretation of the statistics. We assume, without deciding, that the court was incorrect to say that 924(c) career offenders more often than not received a sentence within the Guidelines range.

We conclude that remand for resentencing is unwarranted. A procedural error is harmless when it "did not substantially influence the outcome of the sentencing proceeding," *see United States v. Woods*, 670 F.3d 883, 886 (8th Cir. 2012), or in other words when "we are convinced that the error did not affect the district court's sentencing conclusion." *See United States v. Tabor*, 531 F.3d 688, 692 (8th Cir.

2008). A court's determined focus on other matters when fixing a sentence can convince us in the appropriate case that an error didn't affect the court's sentencing conclusion. *See, e.g.*, *United States v. Wise*, 17 F.4th 785, 789 (8th Cir. 2021).

The appellant in *Wise* faulted the district court for mentioning in its discussion of the dangers of heroin that some of the heroin that the appellant had distributed also contained fentanyl, even though the government did not present evidence of that fact. We held that any error was harmless because, as the government there had argued, the district court did not select the sentence "because it believed fentanyl was present but because" the drugs the appellant distributed had led to someone's death and because of the appellant's considerable criminal history. *Id.* at 788–89.

Similarly, the district court here focused extensively on other matters in selecting an appropriate sentence, only briefly mentioning what it believed were typical sentences for other 924(c) career offenders. A review of the court's explanation at the hearing for selecting the sentence it did puts its statistical observation in the appropriate context. After calculating the Guidelines range, the court turned its attention to the sentencing considerations found in 18 U.S.C. § 3553(a) to determine whether a sentence within the Guidelines range would be appropriate, and its discussion of those considerations covers about thirteen pages of transcript. It began by noting "some extreme aggravating factors," such as the nature and seriousness of Shell's offenses, his multiple, dangerous flights from law enforcement, and especially his criminal history. The court discussed these aggravating circumstances at length, even recounting aloud the circumstances surrounding several of Shell's previous convictions. It observed that Shell was a career offender in both the legal and ordinary sense of that phrase who had spent adulthood "going through a revolving door of the criminal justice system," "either committing crimes or being incarcerated for committing crimes."

The court then proceeded to recite some circumstances it thought were mitigating, such as Shell's difficult childhood, mental and physical health, remorse, and his not brandishing or using a gun when fleeing from police. It was at this point in the hearing that the court briefly mentioned the sentences of similarly situated defendants and offered its view of the relevant statistics. But after making that remark, the court abandoned its short detour and returned to the main subjects of its reasoning—the aggravating and mitigating circumstances of the case. It said, "I can't get over the relative seriousness, the aggravating aspects of the specific offenses of conviction here" and Shell's significant criminal history. The court said that it could not reconcile those considerations "with a sufficient justification to vary downward from the guideline range." It added, "If anything, I could make a really good case for imposing sentence at the upper end of the guideline range" but decided otherwise in light of the mitigating circumstances. "So for those reasons," the court concluded, it sentenced Shell to 262 months. The record therefore shows that the court fixed Shell's sentence by focusing in a determined way on the aggravating and mitigating circumstances of his case, not on the sentences that other 924(c) career offenders received.

We note as well that, even if the court misapprehended nationwide sentencing statistics, it determined from its own, court-specific records that it did not often sentence ordinary career offenders below the Guidelines where they had "earned their stripes as a career offender" as Shell had. After taking much time to review how Shell was a "career offender" in every sense of that phrase, we do not think the court would have treated Shell differently just because he was a 924(c) career offender.

We are therefore unconvinced that any error "substantially influence[d] the outcome of the sentencing proceeding," *see Woods*, 670 F.3d at 886, and so we hold that any procedural error was harmless.

-5-

Shell also maintains that the same statistics he cites in support of his procedural-error argument illustrate that his sentence is substantively unreasonable, since it appears that most 924(c) career offenders in fiscal year 2019 actually did not receive a sentence within the Guidelines range. We see no abuse of discretion here. The district court carefully considered the relevant circumstances and concluded, with a more than ample explanation, that a sentence at the bottom of the Guidelines range was appropriate. We see no reason to think that Shell has overcome the presumption that a Guidelines sentence is reasonable, *see United States v. Coleman*, 635 F.3d 380, 382 (8th Cir. 2011), as this is not the "unusual case" for which we will reverse a sentence as substantively unreasonable. *See United States v. Crumble*, 965 F.3d 642, 646–47 (8th Cir. 2020).

Affirmed.

STRAS, Circuit Judge, concurring in the judgment.

I agree with the court that Shell is not entitled to relief, despite the district court's alleged misstatement at sentencing. The issue was never brought to the district court's attention, so we will reverse, if at all, only for plain error. *See United States v. Troyer*, 677 F.3d 356, 358 (8th Cir. 2012).

In my view, any error could not have been plain "on th[is] record" because, without knowing the source, time frame, or dataset used, it is next to impossible to determine at this point whether the district court actually misstated anything. *Id.* at 359. And when an error is not "clear on the record," we let the judgment stand. *Id.*

_____