# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1448

_____

United States of America

*Plaintiff - Appellee*

v.

Ryan McDaniel

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 15, 2022
Filed: February 10, 2023

_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Ryan McDaniel pleaded guilty to carjacking and brandishing-a-firearm charges and received a 179-month sentence. He now argues that the district court[1]

---

[1]The Honorable Stephen R. Clark, then United States District Judge for the Eastern District of Missouri, now Chief Judge.

committed procedural and substantive errors in determining his sentence. We affirm.

## I.

McDaniel carjacked at gunpoint a Domino's delivery driver in St. Louis, Missouri. Police officers apprehended McDaniel after an extended high-speed chase that traversed multiple interstate highways and residential neighborhoods in St. Louis City and County. At the time of his arrest, McDaniel was on parole for a second-degree robbery conviction.

McDaniel pleaded guilty to carjacking, 18 U.S.C. § 2119, and brandishing a firearm, 18 U.S.C. § 924(c)(1)(A)(ii). While awaiting sentencing, McDaniel committed multiple instances of violent conduct at the Jefferson County, Missouri jail. He attempted to strike the jail nurse, twice charged at correctional officers, and engaged in a scuffle that resulted in a sheriff's deputy breaking an ankle. McDaniel lost credit for acceptance of responsibility as a result of these and other incidents. *See* U.S.S.G. § 3E1.1. McDaniel and the Government then jointly recommended a 53-month sentence for the carjacking charge to be served consecutively with the 84-month statutory minimum sentence for brandishing, § 924(c)(1)(A)(ii), for a total sentence of 137 months.

The district court declined to accept the parties' recommended sentence. In determining McDaniel's sentence, the district court began by considering the advisory sentencing guidelines, calculating a total offense level of 25 and a criminal-history category of IV. Factoring in the 84-month statutory minimum, that yielded a guidelines range of 168 to 189 months. The district court then weighed the 18 U.S.C. § 3553(a) factors, discussing aggravating and mitigating factors.

Towards the end of the § 3553(a) discussion, the district court made remarks that are at the heart of McDaniel's appeal. Referencing data available from the United States Sentencing Commission's Judiciary Sentencing Information ("JSIN")

tool, the district court said that twenty-nine offenders in the database who committed a similar offense and had the same guidelines offense level and criminal-history category as McDaniel received a median sentence of 180 months and a mean sentence of 181 months. McDaniel's counsel interjected and asked whether the district court knew how many offenders in that dataset had received an 84-month mandatory minimum sentence as part of their overall sentence.[2] The district court responded as follows:

> Yes. All of them. The data is on the 29 offenders whose primary guideline was 2B3.1 [the guideline applicable to robbery offenses] and who were convicted of at least one count of 18, United States Code, Section 924(c) with a final offense level of 25 and a criminal history category of four.

The district court then offered a brief rationale for considering the JSIN data:

> So it's information I consider. It's a data point. It's not dispositive. Just like the guidelines, it is information that is—I do take into account and consider it as one of the factors in determining and fashioning a sentence. And in considering avoiding unwarranted sentencing disparities among defendants on a nationwide basis not on a local basis. That's what the guidelines and the Supreme Court require.

The district court then formally denied what it referred to as "the joint recommendation and joint motion for a downward variance" and sentenced McDaniel to 179 months' imprisonment.

McDaniel appeals his sentence, alleging that the district court committed procedural error and that his sentence is substantively unreasonable.

---

[2]Under § 924(c), offenders may be subject to 60-month, 84-month, or 120-month statutory minimums depending on whether a firearm is possessed, brandished, or discharged during a crime of violence. § 924(c)(1)(A)(i)-(iii). Repeat offenders are subject to a statutory minimum of 300 months. § 924(c)(1)(C)(i).

## II.

McDaniel first argues that the district court procedurally erred by referring to the JSIN statistics. McDaniel claims that he had a right under Rule 32 of the Federal Rules of Criminal Procedure to have notice of, and therefore time to review, all material information relied on by the district court at sentencing. Moreover, according to McDaniel, the district court erroneously interpreted the JSIN data. *See United States v. Wright*, 799 F.2d 423, 426 (8th Cir. 1986) ("[S]entences based upon material misinformation or erroneous assumptions violate due process."); *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (explaining that a district court procedurally errs by "selecting a sentence based on clearly erroneous facts").

### A.

We begin by addressing McDaniel's claim that the district court was obligated to disclose its intent to rely on the JSIN statistics. On its face, the disclosure requirement in Rule 32 only applies to the probation officer's presentence investigation report. *See* Fed. R. Crim. P. 32(e)(2). However, in *United States v. Lovelace*, we stated that "a district court's reliance at sentencing on material information not disclosed in advance to a defendant violates the Rule 32 process." 565 F.3d 1080, 1092 (8th Cir. 2009) (finding that a district court's reliance on its personal and undisclosed knowledge of victim impact violated Rule 32). According to McDaniel, the district used the JSIN data in a material way when determining his sentence and therefore should have disclosed it in advance of sentencing.

McDaniel did not object to the district court's failure to disclose in advance of sentencing its intent to rely on the JSIN data. Nevertheless, McDaniel argues that he preserved *de novo* review because he could not have had the opportunity to formulate an objection to the JSIN data without knowing about its use in advance. *See* Fed R. Crim. P. 51(b). Given these circumstances, McDaniel claims that we should treat his counsel's question about the JSIN dataset's composition as

-4-

informing the district court of his claim of error. We disagree. McDaniel's counsel need not have studied the JSIN data prior to the sentencing hearing to have realized that the district court had not disclosed the JSIN data. We therefore review for plain error. *See* Fed R. Crim. P. 52(b); *Greer v. United States*, 588 U.S. ---, 141 S.Ct. 2090, 2096 (2021).

Even assuming that McDaniel could show the district court erred by not disclosing its intent to rely on JSIN data, this error would not be plain. An error is plain only if, at the time of appellate review, the erroneous nature of the trial court's decision is obvious. *Henderson v. United States*, 568 U.S. 266, 273-74 (2013). *Lovelace* and caselaw from other circuits establish that a district court cannot rely on certain kinds of undisclosed information, especially private information about the defendant's crime and its impact on victims. *See United States v. Hayes,* 171 F.3d 389, 392 (6th Cir. 1999) (holding that a district court's reliance on confidential victim-impact letters violates Rule 32). However, we have not held that the *Lovelace* disclosure rule extends broadly to public information that is not specific to the defendant. Indeed, we rejected a challenge to a district court's use of undisclosed general knowledge about a state's prison system in *United States v. Becker*, explaining that a district court's personal knowledge of a defendant's criminal conduct and its impact on victims "differs substantially from general knowledge about the prison system." 636 F.3d 402, 406-07 (8th Cir. 2011). Therefore, it is not plainly the case at the time of our review that the district court was obliged to disclose in advance its intent to rely on publicly available JSIN data.

Thus, the district court did not commit plain error by relying on the undisclosed JSIN data. We therefore reject McDaniel's argument that the district court procedurally erred by failing to disclose the JSIN data in advance of sentencing.

B.

We next turn to McDaniel's claim that the district court relied on an erroneous interpretation of the JSIN data in determining its sentence. McDaniel argues that the district court mistakenly understood the JSIN dataset as only containing offenders with an offense carrying an 84-month minimum under § 924(c) as part of their overall sentence. McDaniel's briefing diligently reviews the underlying twenty-nine cases in the JSIN dataset relied on by the district court. In only twenty of those cases was the defendant subject to an 84-month § 924(c) minimum. For these twenty defendants, the average sentence was 172 months and the median 168 months. In the other cases, two of the other offenders had a 60-month statutory minimum, six had a 120-month statutory minimum, and one had a 300-month statutory minimum. The district court therefore did not understand the composition of the dataset, according to McDaniel. McDaniel received a 179-month sentence, and the district court stated that the JSIN median was 180 months. McDaniel thus argues that the JSIN data shaped the district court's sentencing determination and that he would have received a lower sentence if the district court relied on a dataset exclusively containing offenders with an 84-month § 924(c) minimum.

The Government does not dispute McDaniel's conclusion that offenders in the dataset with an 84-month § 924(c) minimum received lower mean and median sentences than the figures announced by the district court. Instead, the Government argues that the district court understood the variance in § 924(c) statutory minimums within the dataset but misunderstood McDaniel's question about the dataset's composition. The Government emphasizes that after the district court answered "yes" to McDaniel's counsel's question about the § 924(c) minimum, the district court proceeded to explain that the offenders "were convicted of at least one count of 18, United States Code, Section 924(c)." According to the Government, the district court thereby indicated its awareness that the JSIN database included offenders with statutory minimums of lengths other than 84 months.

-6-

We assume without deciding that the district court incorrectly interpreted the JSIN data. However, we conclude that a remand for resentencing is unnecessary because the district court's alleged error did not prejudice McDaniel. A procedural error is harmless when it "did not substantially influence the outcome of the sentencing proceeding." *United States v. Woods*, 670 F.3d 883, 886 (8th Cir. 2012). "A court's determined focus on other matters when fixing a sentence can convince us in the appropriate case that an error didn't affect the court's sentencing conclusion." *United States v. Shell*, 23 F.4th 803, 806 (8th Cir. 2022).

In *Shell*, we found a district court's invocation of allegedly errant statistics at sentencing to be harmless. *Id.* at 805-06. The defendant in that case, a career offender under § 924(c), also sought a below-guidelines sentence. The district court said that it "looked at the United States Sentencing Commission data for career offenders because [it] wasn't just super familiar with sentencing statistics for 924(c) career offenders." *Id.* at 805. It interpreted that data as showing that a majority of § 924(c) career offenders nationwide do not receive below-guidelines variances. *Id.* at 805. Assuming the *Shell* district court incorrectly interpreted the data, we nevertheless declined to remand for resentencing because the sentencing transcript showed that the court "focused extensively on other matters in selecting an appropriate sentence." *Id.* at 805-06. These other matters were "the nature and seriousness of Shell's offenses, his multiple, dangerous flights from law enforcement, and especially his criminal history." *Id.* at 806. Thus, viewing the record in its totality, we found that "the court fixed Shell's sentence by focusing in a determined way on the aggravating and mitigating circumstances of his case, not on the sentences that other 924(c) career offenders received." *Id.*

A review of the sentencing transcript in this case demonstrates that the district court similarly focused on McDaniel's offense and other aggravating factors in determining the sentence. Like the district court in *Shell*, the district court in this case referenced the disputed data merely for comparative purposes as a "data point."

Starting with McDaniel's offenses, the district court described them as "very, very disturbing," emphasizing that during the carjacking McDaniel pointed his firearm at the victim and threatened to shoot him. The district court also focused on McDaniel's high-speed attempt to evade police apprehension, noting that McDaniel "imperiled many people on the interstates"; "went through residential neighborhoods, disobey[ing] several traffic stops, traffic lights and stop signs while creating a substantial risk to the public"; and was apprehended only after law enforcement deployed spike strips at risk to their own safety.

The district court then considered McDaniel's criminal history, stating that McDaniel "has a significant history that causes me grave concern" and discussing McDaniel's past offenses at length. The court noted a recidivist pattern by comparing his present crime with his past crimes involving stealing, firearms, and highly unsafe driving. The court also emphasized McDaniel's post-arrest misconduct, noting the deputy's broken ankle, McDaniel's attempt to strike a jail nurse, and two other times when McDaniel charged at correctional officers. The district court then reviewed applicable mitigating factors, such as family history, substance abuse, and mental-health issues. The court, however, concluded that McDaniel "made terrible choices despite all of the warnings and opportunities to change his behavior" and "continues to pose serious and substantial threats to society."

Only after this extended discussion of McDaniel's crimes and aggravating circumstances did the district court discuss the JSIN data. Shortly after that exchange, the district court summarized its analysis by again focusing on defendant-specific matters. The district court highlighted the aggravating circumstances and emphasized that it grounded its decision in the § 3553(a) factors. It stated:

> I have arrived at a sentence that's sufficient but not greater than necessary to comply with the purposes of 18, United States Code, Section 3553(a). And notwithstanding the objections in this case, I would impose the same sentence based on my consideration of the

3553(a) factors and all the facts and circumstances of this case as I have related them here today.

I deny the joint -- what is essentially the joint recommendation and joint motion for a downward variance for all the reasons I have stated. It does not adequately reflect the nature and characteristics of the offense; the history and characteristics of the defendant; the seriousness of the danger created by the defendant's offense here, including his extended high-speed fleeing and endangering other people; the pattern of escalating conduct; the victim impact which there is a trauma experienced by carjacking victims that I think is well-known.

And I've considered the sentences of similarly-situated defendants and I've considered all of the arguments that have been presented here very ably by counsel today.

The district court then concluded by announcing that it had rejected the parties' joint-motion for a downward variance and by imposing a 179-month sentence.

The district court's explanation for selecting the 179-month sentence thus "puts its statistical observation in the appropriate context." *See Shell*, 23 F.4th at 806. The district court maintained a determined focus on the aggravating circumstances in McDaniel's case and imposed McDaniel's sentence based on its consideration of the § 3553(a) factors. Relatedly, the district court stated that the sentencing data was "not dispositive," or, in other words, not a deciding factor in its sentencing determination. *See United States v. Marin*, 31 F.4th 1049, 1057 (8th Cir. 2022) (finding any error made by a district court in calculating the guidelines range to be harmless because the district court extensively considered the § 3553(a) factors and explained that the guidelines were "an important, though not in any way controlling, factor to be considered.").

Moreover, the district court repeatedly referenced the applicable sentencing guidelines range of 168 to 189 months, including when discussing national consistency, and noted that the parties requested a downward variance of 31 to 52 months. The guidelines range thus provided the district court with an independent

source of information, aside from the JSIN data, for its considerations of national consistency. *Cf. United States v. Wise*, 17 F.4th 785, 788-89 (8th Cir. 2021) (explaining that a district court's erroneous statement at sentencing that heroin sold by the defendant contained fentanyl was harmless because the court relied on other, independent evidence which demonstrated that the defendant was aware of heroin's dangerous nature). Lastly, we note that the 179-month sentence McDaniel received was also the approximate mid-point of the 168 to 189 month guidelines range. This further rebuts McDaniel's contention that the length of the sentence he received demonstrates that he was prejudiced by the district court's improper interpretation of the JSIN data.

In sum, we find that any error made by the district court in interpreting the JSIN statistics "did not substantially influence the outcome of the sentencing proceeding" because the district court focused on McDaniel, not the data. *See Woods*, 670 F.3d at 886. If the district court erred in this case, its error was harmless.

## III.

We next turn to McDaniel's claim that the district court substantively erred by imposing an unreasonable sentence. We review the substantive reasonableness of a district court's sentence for abuse of discretion. *United States v. Godfrey*, 863 F.3d 1088, 1099 (8th Cir. 2017). Sentences within the guidelines range are presumptively reasonable. *United States v. Jones*, 990 F.3d 1141, 1144 (8th Cir. 2021).

McDaniel argues that the district court substantively erred by excessively relying on nationwide sentencing data and by giving insignificant weight to mitigating factors. *See* § 3553(a). We disagree. As described above, the sentencing transcript indicates that the district court only briefly considered the JSIN data in a non-dispositive manner. Indeed, the district court primarily relied on factors specific to McDaniel, most importantly the severity of his crimes and his extensive criminal

history. Therefore, the record does not support McDaniel's suggestion that the district court excessively relied on the JSIN data in determining a sentence.

McDaniel's claim that the district court gave insignificant weight to mitigating factors also lacks support. The district court discussed mitigating factors, including mental health, family issues, and substance abuse. However, it concluded that they should carry little weight because McDaniel had failed to take advantage of multiple opportunities to turn his life around and remained a threat to society. In sum, the district court did not abuse its discretion by giving mitigating factors short shrift; rather, it persuasively explained why aggravating factors should carry more weight. *See Feemster*, 572 F.3d at 461-62 (explaining that we must give "due deference" to a district court's weighing of the § 3553(a) factors).

McDaniel's 179-month, within-guidelines sentence reflects the district court's careful weighing of the § 3553(a) factors. As the district court did not fail to consider or properly weigh any relevant factor or otherwise commit a clear error of judgment, we conclude that McDaniel's sentence is not substantively unreasonable.

## IV.

For the foregoing reasons, we affirm.

STRAS, Circuit Judge, Dissenting.

The district court said what it said during the sentencing hearing, and what it said was wrong. In answering a question about a search it ran using the Judiciary Sentencing Information tool, which aggregates data on offenders sentenced in the federal system, it declared that all 29 offenders in the dataset had an 84-month statutory-minimum sentence. That was mistaken. Some had 60-month minimum sentences, several more had 120-month minimums, and one topped out at a 300-month minimum.

The district court also stated that the data was "information [it] consider[ed,] . . . a data point . . . [to] avoid[] unwarranted sentencing disparities." Having all but admitted that the search influenced its decision to impose a 179-month sentence, I would remand for resentencing. *See* 18 U.S.C. § 3553(a)(6) (requiring district courts to consider "unwarranted sentenc[ing] disparities among defendants"). In the language of the plain-error standard, it made a "clear" or "obvious" error that, by the court's own words, affected McDaniel's substantial rights. *United States v. Olano*, 507 U.S. 725, 734 (1993); *cf. United States v. Shell*, 23 F.4th 803, 807 (8th Cir. 2022) (Stras, J., concurring in the judgment) (agreeing that the sentence should stand on plain-error review because no one could identify "the source, time frame, or dataset used" at sentencing).

———————————————